WALTER POLK V. THE STATE.

No. 13069.  Delivered March 5, 1930.
Reported in 25 S. W. (2d) 841.

The opinion states the case.

*W. E. Donley* of Jacksonville, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, twelve years in the penitentiary.

After a meeting at a colored church, Nettie Harvey, a negro woman, went to her home, getting there between nine and ten o'clock p. m.  Her family consisted of herself and three small children.  Appellant rode on horseback behind the wagon in which Nettie was until they got to her house, when he dismounted and went into the yard and to her porch.  He presently asked Nettie where her axe was and she told him it was out there under a tree.  Appellant said to her, "Yonder comes Grant," referring to deceased.  Appellant stood by the tree and Nettie was on her porch when deceased came up and called three times to Nettie to come out to where he was.  He then came into the yard.  Appellant accosted deceased and wanted to know what cause Nettie had given him that he wanted to impose on her.  According to Nettie, deceased then said, "I will kill the whole push excusing the children."  She further said appellant then hit Grant over the head with an axe.  Being asked what deceased was doing when appellant hit him, she said that when deceased made the statement about killing the whole push, he was standing and "threw his hands up, his hands were just this way."

What witness meant by "just this way" this court can not tell. Often and in many records we are confronted with the same trouble. A witness will make a motion or a demonstration perfectly clear to the jury who see it, but perfectly blank to this court searching the record to ascertain the correctness of some ruling of the court below possibly on a point vitally affected by the gesture or demonstration made. We often are impelled to urge both trial attorneys and courts to put into the record some fair explanation of such a statement indicative of something shown to the jury, information concerning which is withheld.

The vital point in this case relates to the rulings of the court upon matters admissible only upon the issue of self-defense. Appellant did not testify. Nettie Harvey was the only other eyewitness. Apparently at once after deceased made the statement about killing the whole push, etc., and made the demonstration with his hands referred to by Nettie Harvey on the witness stand as "just this way," appellant struck deceased on the head with an axe three times from the effect of which deceased died in a few moments.

Several witnesses swore that they rode in the wagon with deceased from the church referred to, on the night in question, up to and little past Nettie Harvey's house. All of these witnesses agree that appellant was in the yard of said house when the wagon came up, and that either in front of or a short distance past said house, deceased called out. Sol Marshall swore deceased then said: "Goodbye, Nettie; G—d your heart—I will be back and kill you s—of —bs." Harris swore deceased said: "Good-bye, Nettie, G—d your little heart to hell." Sam Jones swore that deceased said: "Good-bye, Nettie, G—d your heart to hell." Morgan swore as did Harris. All these witnesses agree that after passing Nettie's house, and after making the statement referred to, deceased sprang from said wagon and started back toward said house rapidly. Morgan swore that when deceased sprang out of the wagon he said: "I am going back and kill all of them s—of—bs." Jones said when deceased jumped out of the wagon he said "G—d d—n it," and started in a running trot up the road toward Nettie's house. Sol Marshall said deceased jumped out of the wagon and started running back toward Nettie's house. He said that deceased had been going with Nettie a long time. Nettie Harvey herself swore that she and deceased were going to be married.

In this condition of the record we find in bill of exception No. 1 that John or Jim Myers, constable of the precinct where the killing

occurred, a white man, who had been duly summoned as a witness and who had also testified at a former trial hereof, was sick and absent from court when the case was called for trial. Appellant sought to put the case off because of the absence of Myers. Apparently as affecting this continuance the bill sets up as follows:

"The State agreed or told the court that if the court stenographer would transcribe the evidence of John or Jim Myers as given on the previous trial at the July Term, 1928, that the same could be introduced without objection on the part of the State; the court agreed to have the evidence of said Myers transcribed by the court reporter, but after the evidence had been introduced by both parties, and the defendant called upon the court reporter, R. B. Blake, for the transcription of Myers' evidence; when Mr. Blake informed the court and the defendant that he did not have the stenographical notes with him, but that they were at his home in Nacogdoches; whereupon the defendant requested the court to postpone the further trial of the case until the notes could be had and the evidence transcribed; the court refused to grant said motion and proceeded with the trial and the defendant was deprived of said evidence. The said evidence was as follows:"

Following this statement the bill contains the transcribed testimony Myers had given upon the former trial, and in same it appears that Myers got to the scene of the killing the next morning between eight and nine o'clock, and found a big knife with a blade from two and a half to three inches long lying out on the ground. He also testified that he knew the deceased, and his reputation was that of a fighting negro; that he was a dangerous character and had that reputation. The bill further sets out that the State would attempt to show deceased had a good reputation as a peaceable, law-abiding citizen. Said bill of exception is approved without qualification. We note that Nettie Harvey testified that the knife lying by deceased after his death was one she had given him and that it was a small knife.

The learned trial judge submitted to the jury the law of self-defense, to which issue both the finding of the knife by Constable Myers and the bad reputation of deceased as a quarrelsome and fighting man, were pertinent. We are at a loss to understand just how the court could have agreed, as stated in said bill of exception to have the testimony of Myers transcribed and delivered to appellant in order that it might be introduced in evidence according to the agreement between appellant and the State,—and then force appel-

lant to conclude the trial without said testimony. We are not able to bring ourselves to believe but that the absence of Myers' testimony may have inflicted material injury upon appellant's case. We think to refuse the application for postponement or continuance in the face of the facts stated and approved by the court in said bill of exceptions, was such action as may have affected the fairness of the trial, and may have contributed to the verdict of guilt.

· The judgment will be reversed and the cause remanded.

*Reversed and remanded.*